UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CORY GROOMS,

                Petitioner,

v.                                                Case No.  8:03-cv-1156-T-24TGW

JIM WITT, JAMES V. CROSBY, JR.,

                Respondents.
_____/

## **ORDER**

      This cause is before the Court on Petitioner Cory Grooms' 28 U.S.C. § 2254 petition for writ of habeas corpus and the Respondent's response to the petition.  Grooms did not file a reply to the response.  Grooms challenges his conviction and sentence entered by the Circuit Court for the Twelfth Judicial Circuit, Manatee County, Florida.

### BACKGROUND

      Grooms was charged by information with the attempted first degree murder and attempted robbery with a firearm of Michael Clarke. (Exh. 14,  Vol. I, R 3-4).[1]  The State moved in limine to exclude any reference to an incident in which someone fired a weapon outside Clarke's apartment after Clarke had returned from the hospital. (Exh. 14, Vol. I,  R 94-95).  Additionally, the State moved in limine that there be no reference, during the trial,

---

[1] The State filed the record on direct appeal as Exhibit 14.

to the fact that Michael Clark had used aliases in the past. (Exh. 14, Vol. II, T 4).[2] The state trial court granted both motions. (Exh. 14, Vol. II, T 10).

The jury found Grooms guilty of the lesser included offense of attempted second degree murder with a firearm (count one) and the attempted robbery with a firearm (count two). (Exh. 14, Vol. I, R 128). On June 29, 2000, the state trial court sentenced Grooms to thirty years imprisonment with a twenty-five year mandatory minimum on count one and to twenty-five years imprisonment with a twenty-five year mandatory minimum on count two. (Exh. 14, Vol. I, R 141-147). The sentence on count two ran concurrently with the sentence on count one.

Grooms appealed, raising one issue:

THE TRIAL COURT ABUSED ITS DISCRETION IN PROHIBITING IMPEACHMENT OF THE STATE'S MAIN WITNESS CONCERNING HIS USE OF A FALSE NAME MADE UNDER OATH IN VIOLATION OF THE DEFENDANT'S RIGHT TO CROSS-EXAMINATION UNDER THE SIXTH AMENDMENT AND DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

(Exh. 1) The state district court of appeal per curiam affirmed the conviction and sentence on September 12, 2001. Grooms v. State, 796 So. 2d 1172 (Fla. 2d DCA 2001) [Table].

On August 1, 2002, Grooms filed a Rule 3.850 motion for postconviction relief, raising three allegations of ineffective assistance of trial counsel. (Exh. 5). On September 9, 2002, the state trial court summarily denied the Rule 3.850 motion in a written order. (Exh. 6) After setting out the Strickland v. Washington, 466 U.S. 668 (1984) standard, the state trial court made the following findings of fact and conclusions of law:

---

[2] Pages designated by the letter "T" are page numbers in the upper right hand corner of the page. The page was not given an "R" number.

Ground One: Defendant claims counsel was ineffective because he failed to insure that prospective jurors were sworn prior to voir dire. As a subsidiary claim, he alleges that counsel was ineffective for failing to request the voir dire examination to be transcribed. Neither claim has any merit.

As the attached Record of Oaths Administered demonstrates, Marlene Moran, the Jury Coordinator for the Twelfth Circuit, collectively swore the jury venire on May 30, 2000, prior to the jury being questioned on voir dire in the Defendant's case. Moreover, Defendant's conviction is not rendered defective because the jury panel that tried the Defendant's case was properly sworn to try all issues and instructed to render a true verdict according to the law and the evidence. See Zapf v. State, 17 So. 225 (Fla. 1895); Brown v. State, 10 So. 736 (Fla. 1892); (T.T. 22).

The Defendant's reliance on the Fernandez case is misplaced. See Fernandez v. State, 758 So.2d 1199 (Fla. 4th DCA 2000). Fernandez deals only with the facial sufficiency of a Defendant's claim of ineffectiveness based upon the failure to insure that the jury venire was sworn. Likewise, the Defendant's reliance on the second Fernandez case is also misplaced. See Fernandez v. State, 814 So.2d 459 (Fla. 4th DCA 2001). In the second case, the district court reversed and remanded for an evidentiary hearing because the portion of the record attached to the trial court's order did not conclusively refute the appellant's claim that the jury venire had not been sworn. In this case, however, the attached Record of Oaths Administered conclusively refutes the Defendant's claim that his jury venire was not sworn.

Finally, the Gonsalves case merely encourages trial judges to include on the record either the swearing of the prospective jurors or a recitation that the jurors were sworn prior to voir dire questioning. See Gonsalves v. State, 26 Fla. L. Weekly D 2530) (Fla. 2d DCA Oct. 19, 2001). Gonsalves does not, however, preclude the use of the Record of Oaths Administered to demonstrate that the prospective jurors were sworn in the jury room prior to being brought to the courtroom.

As to the subsidiary claim that counsel was ineffective for not causing the voir dire portion of his trial to be transcribed, the Defendant's claim also fails because it is legally insufficient. Defendant fails to allege any omission or error on the part of counsel that occurred during voir dire, fails to allege any bias or other impropriety on the part of the jury panel that tried his case, and fails to establish any prejudice resulting from this portion of the record not being transcribed.

Ground Two: Defendant claims counsel was ineffective because he failed to oppose the State's motion in limine with regard to a subsequent

shooting incident outside of the victim's apartment. The record conclusively refutes this claim.

The State filed a Motion in Limine in which it sought to exclude any evidence of an incident where a weapon was fired from a vehicle outside of the victim's apartment after he had returned from the hospital as a result of the shooting in this case. (See Motion in Limine, filed on 5/25/00). The State argued that this evidence was irrelevant, misleading and would just tend to confuse the jury. (T.T. 8)

In response, defense counsel argued that the incident was relevant because one of the persons (Ray Couran) in the vehicle was initially developed as a suspect in the previous shooting of the victim that same evening, and the victim's roommate was able to identify the persons in the vehicle, neither of which were the Defendant. Counsel argued this constituted, at least circumstantial evidence, that the Defendant was not the shooter of the victim in this case. (T.T. 8-10) The Court rejected this argument and excluded the evidence. (T.T. 10) In the motion for new trial filed after trial on the Defendant's behalf by defense counsel, he again argued the relevance of this information and that the court had incorrectly excluded it from trial. (6/9/00 Tr. at 4-7)  This record information conclusively refutes the Defendant's claim that his counsel did nothing to oppose the State's motion.

Defendant's claim that counsel did not diligently investigate a "female" to whom Ray Couran allegedly confessed is legally insufficient to state a claim for relief. The Defendant does not identify this female, does not indicate that counsel ever had an identity of this female, much less an address or other manner of contacting her. Moreover, during pre-trial argument on the motion in limine, defense counsel flatly stated on the record that he had been "unable to locate" this female. (T. T. 9) Quite simply, Defendant fails to give specifics as to what counsel did or did not do in attempting to locate this female in order to state a sufficient claim for relief. Therefore his claim is rejected.

Ground Three:   Defendant claims counsel was ineffective for failing to object to "the prosecutor's contravene (sic] statement as to Florida reasonable doubt standards. Specifically, Defendant contends that the following statement by the prosecutor was ambiguous and misleading and impermissibly shifted the burden of proof to him:

> And in Florida we don't really describe to you what a reasonable doubt is, we tell you what it isn't, and it's not a mere

> > possible doubt, a speculative, imaginary, or forced doubt. (T.T. 274)
> >
> > The first problem with the Defendant's claim is that he has picked one isolated statement out of the prosecutor's initial closing argument, an argument that extends over nine pages in the trial transcript (T.T. 268-277), and he takes that statement out of context to make the untenable argument that it was construed by the jurors possibly either to minimize the importance of reasonable doubt or shifting the burden of proof to the Defendant to prove that a reasonable doubt existed. When the statement is examined in its proper context, however, it is clear that the prosecutor was discussing the concept of reasonable doubt for the jurors' benefit, a discussion that encompassed not one statement, but approximately four pages in the record, focusing on what types of doubts were reasonable and what types were not. (T.T. 274- 278)
> >
> > The second problem with the Defendant's claim is that he points to nothing in the record to back up his speculation that the jurors minimized the concept of reasonable doubt or believed that the Defendant bore the burden of proving that a reasonable doubt existed. The reason is that the record conclusively refutes the Defendant's claim. The Court instructed the jury prior to the commencement of trial that they would be instructed on the particular elements of the crimes, would be given specific, written jury instructions at the conclusion of the trial, and that the judge would decide which laws applied and would explain those laws to them. (T.T. 23-24) Prior to trial, the jurors were also specifically instructed that the defendant had an absolute right to remain silent and, at no time, did the defendant have a duty to prove his innocence. (T.T. 267)
> >
> > Thus, the record is clear. Counsel's statements were argument only. They were not misleading, nor did they impermissibly shift the burden of proof to the Defendant. The instructions set forth above, combined with the final instructions to the jury on the burden of proof and reasonable doubt (T.T. 333-335), were clear and unambiguous. The law presumes the jury followed the judge's instructions in the absence of evidence to the contrary. See Collier v. State, 259 So.2d 765 (Fla. 1st DCA 1972). The Defendant presents no evidence to demonstrate that the jury was confused or failed to follow the Court's instructions in returning its verdict.

(Exh. 6, Order Denying Defendant's Motion for Postconviction Relief at pp. 2-6).

Grooms' motion for rehearing was denied by the state trial court. (Exh. 7). Grooms then appealed the state trial court's denial of Rule 3.850 relief, challenging only the state

trial court's ruling on ground one of his Rule 3.850 motion. (Exh. 9). On February 7, 2003, in Case No. 2DO2-5006, the state district court of appeal per curiam affirmed the denial of Rule 3.850 relief. (Exh. 10). Grooms v. State, 843 So. 2d 269 (Fla. 2d DCA 2003) [Table]. Grooms filed a motion for clarification (Exh. 11), which the state district court of appeal denied as moot on March 18, 2003. (Exh. 12). Grooms signed the present timely federal petition for writ of habeas corpus on June 9, 2003, raising four grounds for relief.

## STANDARDS OF REVIEW

Because Grooms filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d 880, 889-90 (11th Cir. 2003); Maharaj v. Sec'y of Dept. of Corrections, 304 F.3d 1345, 1346 (11th Cir. 2002). The AEDPA "establishes a more deferential standard of review of state habeas judgments," Fugate v. Head, 261 F.3d 1206, 1214 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); see, Bell v. Cone, 2005 WL 123827 (U.S. Jan. 24, 2005) (habeas court's standard for evaluating state-court ruling is highly deferential, which demands that state-court decisions be given benefit of the doubt)[citing 28 U.S.C.A. § 2254(d)]). AEDPA is relevant to a review of this Petition.

Pursuant to AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

>(1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Price v. Vincent, 123 S.Ct. 1848, 1852-53 (2003); Clark v. Crosby, 335 F.3d 1303, 1308 (11th Cir. 2003); Harrell v. Butterworth, 251 F.3d 926, 930 (11th Cir. 2001). "Clearly established Federal law" is the governing legal principle, not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision. Lockyer v. Andrade, 538 U.S.63, 71-72 (2003). Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that the state court's conclusion is contrary to clearly established governing federal law. Mitchell v. Esparza, 124 S.Ct. 7, 10 (2003); Clark v. Crosby, 335 F.3d at 1308-10; Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Mitchell v. Esparza, 124 S.Ct. at 10 (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). See also Price v. Vincent, 123 S.Ct. at 1853; Lockyer v. Andrade, 538 U.S. at 75-77. A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court

precedent. Early v. Parker, 537 U.S. 3, 8 (2002); Mitchell v. Esparza, 124 S.Ct. at 10; Parker v. Secy of Dept. of Corrections, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context where it should apply. Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000). The "unreasonable application" inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable. Lockyer v. Andrade, 538 U.S. at 75-77; Williams, 529 U.S. at 409-10; Penry v. Johnson, 532 U.S. at 791-792; Woodford v. Visciotti 537 U.S. 19, 25 (2002); Mitchell v. Esparza, 124 S.Ct. at 11-12; Price v. Vincent, 123 S.Ct. at 1853.

Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Holland v. Jackson, 124 S.Ct. 2736, 2737-2738 (2004) (citing Yarborough v. Gentry, 540 U.S. 1 (2003)) (per curiam) (denying relief where state court's application of federal law was supported by the record); Miller-El v. Cockrell, 537 U.S. 322, 348 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. at 697, n. 4 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Henderson, 353 F.3d at 890-91. The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact. Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001).

A petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). Williams v. Taylor, 529 U.S. at 433-34.

Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the Court issues only a one-sentence denial of relief, which is essentially a summary dismissal. Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. See Coleman, 501 U.S. 722, 735-36 (1991); Kight v. Singletary, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); Tower v. Phillips, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

### Ineffective Assistance of Counsel Claims

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: 1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness"; and 2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable

-9-

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687-88; see also, Wiggins v. Smith, 123 S.Ct. 2527 (2003); Williams v. Taylor, 529 U.S. 362 (2000). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690). This judicial scrutiny is "highly deferential." Id. at 477. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90; Bell v. Cone, 535 U.S. 685, 698 (2002). Because the ultimate resolution of the ineffective assistance of counsel claims are mixed questions of law and fact, Thompson v. Haley, 255 F.3d 1292, 1297 (11th Cir. 2001); Meeks v. Moore, 216 F.3d 951, 959 (11th Cir. 2000), the presumption of correctness contained in § 2254(e)(1) does not apply to this determination. Parker v. Head, 244 F.3d at 835-837. "[T]he Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims." Williams, 529 U.S. at 391.

"To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled. ' " Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting Burger v. Kemp, 483 U.S. 776 (1987)). "Therefore, the cases in which habeas petitioners can properly prevail an the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir.), cert. denied, 513 U.S. 899 (1994).

The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take. See Chandler, 218 F.3d at 1315. An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment. Chandler, 218 F.3d, at 1314 n. 15.

### Harmless Error Standard Applies

Finally, in the event constitutional error is found in a habeas proceeding, the relevant harmless error standard is set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). The test is "less onerous" then the harmless error standard enunciated in Chapman v. California, 386 U.S. 18 (1967). "The test is whether the error had substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, 507 U.S. at 637. Although no constitutional error has occurred in Grooms's case, any possible error would clearly be harmless beyond any reasonable doubt based on the facts and the record herein.

### DISCUSSION

A review of the record demonstrates that Grooms' federal 28 U.S.C. § 2254 petition for writ of habeas corpus must be **DENIED**.

## GROUND ONE

Grooms alleges the state trial court abused its discretion in prohibiting impeachment of Michael Clarke regarding Clarke's use of aliases in other situations. This issue was raised in Grooms' direct appeal.

A defendant's right to confront witnesses is not unfettered. "[T]he confrontation clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985). There is no right to unlimited cross-examination. Delaware v. Van Arsdall, 475 U.S. 673 (1986). Even when the evidence is relevant, a state trial court judge has wide discretion to exclude evidence that is repetitive. See Crane v. Kentucky, 476 U.S. 683 (1986) (citing Delaware v. Van Arsdall) The court stated in Van Arsdall:

> . . .trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness, safety, or interrogation that is repetitive or only marginally relevant.

475 U.S. at 679.  Moreover, the United States Supreme Court has acknowledged the power of the states to exclude evidence through the application of evidentiary rules that serve the interests of fairness and reliability. Chambers v. Mississippi, 410 U.S. 284, 302 (1973).

The issue in ground one was addressed pre-trial during the hearing on the State's motion in limine, and extensive argument occurred during trial, prior to cross-examination of the victim. (Exh. 14, Vol. II-Vol. III, T 61-115). The state trial court judge would not allow

evidence of the victim's use of different names in other court cases because the evidence was irrelevant and was not admissible for impeachment purposes under Florida's Rules of Evidence. The court announced its findings on the record:

> THE COURT: . . . Here's the problem with this and I'm going to make a finding for the record. This is not relevant at all in this case. If anything, it may be collateral, but it has no relationship to his truthfulness before this jury. It's not a prior inconsistent statement, it has nothing to do with his reputation in the community. So the question becomes, under the Banda[3] case, whether or not, as the Supreme Court points out, whether or not he has denied the use of the alias. He's admitted all of the convictions, as we talked about yesterday; he has admitted that there will now be seven convictions before the jury. Doesn't make any difference what name he used, it's that this person sitting in front of this jury has admitted that he has seven prior convictions.
>
> So that's where I am with this after reading these other cases.

(Exh. 14, Vol. III, T 95-96).

As to relevance, the State correctly argued in its answer brief:

> The victim had not denied the prior use of an alias, and the mere fact that a person has at different times used different names, does not necessarily demonstrate dishonesty. In the absence of evidence that there was a nefarious purpose behind the use of a different name, or that the witness denied using more than one name, there is little, if any, relevance between the use of 6 fictitious name and the witness' credibility. Therefore, any questioning relating to the use of an alias was either irrelevant or only marginally relevant and the trial court did not abuse its discretion by not allowing such questioning.

(Exh. 2, Answer Brief of Appellee at p. 4).

Moreover, the absence of evidence of Clarke's use of a different name in unrelated court proceedings was harmless. Clarke testified that he had six felony convictions and two convictions for crimes of dishonesty. (Exh. 14, Vol. II, T 40; Vol. III, T 117). On

---

[3] Banda v. State, 536 So. 2d 221, 224 (Fla. 1988), cert. denied, 489 U.S. 1087 (1989).

cross-examination, Clarke was impeached with the fact that he had previously testified to a different number of prior convictions and to differing descriptions of several other factors related to the crime, including the description of the shooter and the time that the shooting occurred. (Exh. 14, Vol. III, T 117-140). Under these circumstances, where the witness had already testified to multiple prior convictions, including convictions for crimes of dishonesty, and had been impeached on significant parts of his testimony, there is no reasonable possibility that the witness' prior use of a different name would have affected the verdict. Thus, the state trial court rulings did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established United States Supreme Court law, nor did they result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

## GROUND TWO

Grooms alleges his attorney was ineffective for not objecting when the trial court failed to place the prospective jurors under oath prior to voir dire examination. A similar claim raised in the Rule 3.850 motion was correctly denied by the state trial court. Grooms can show neither deficient performance nor prejudice in this instance because the state court record conclusively established that the Jury Coordinator for the Twelfth Circuit collectively swore the jury venire on May 30, 2000, prior to the jury being questioned on voir dire. (See Exh. 6, Jury swearing in log attached to the state trial court's order denying postconviction relief).

## GROUND THREE

Grooms claims he was denied the effective assistance of counsel where counsel failed to oppose the State's motion in limine preventing Grooms from "making any reference or questioning regarding an incident in which someone fired a weapon outside the victim's [Clarke's] apartment complex after he had returned from the hospital." Grooms cannot show the denial of this claim by the state trial court was unreasonable. The excerpt from the trial transcript attached to the order denying postconviction relief reflects that defense counsel did oppose the State's motion in limine. (Exh. 14, Vol. II, T 8-10). Grooms' attorney argued that evidence of the subsequent shooting incident was relevant and admissible, at least circumstantially, to show that someone other than Grooms committed the earlier offenses for which Grooms was charged. (Exh. 14, Vol. II, T 9-10). The trial court disagreed, because defense counsel could not produce any evidence indicating that the two men in the vehicle in the subsequent shooting were the two people who committed the offense against Clarke. (Exh. 14, Vol. II, T 10). Accordingly, contrary to Grooms' assertion, trial counsel did oppose the State's motion in limine, and no ineffectiveness has been shown.

## GROUND FOUR

Finally Grooms faults his attorney for failing to object when the prosecutor stated in closing argument, "And in Florida we don't really describe to you what a reasonable doubt is, we tell you what it isn't, and it's not a mere possible doubt, a speculative, imaginary, or forced doubt." (Exh. 14, Vol. IV, T 274). The state trial court addressed this claim in great detail in the order denying relief and reasonably determined, based on a review of the

prosecutor's full closing argument, that defense counsel was not ineffective for declining to object to the prosecutor's statement.

First, defense counsel's performance was not deficient because the prosecutor's statement, when taken in context, was correct. Second, there was no prejudice to Grooms in light of the fact that the jury was instructed more than once that only the court instructs the jury regarding the law, and that what the lawyers say is argument only. (Exh. 14, Vol. II, T 23-24; Vol. IV, T 267). The court gave the final instructions on the reasonable doubt standard (Exh. 14, Vol. IV, T 333-335), and the jury is presumed to have followed the court's instructions in the absence of evidence to the contrary. Grooms cannot show that the prosecutor's statement confused or mislead the jury.

Grooms has not shown that he is entitled to federal habeas corpus relief on any of his claims.

Accordingly, the Court orders:

That Petitioner Grooms' petition for writ of habeas corpus is denied, with prejudice. The Clerk is directed to enter judgment against Grooms and to close this case.

ORDERED at Tampa, Florida, on June 8, 2005.

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record
Cory Grooms